of America, Mark and Michael Reardon, et al., poets. Mr. Walters for the court, Ms. Loumiet, the accolades. Good morning, your honors, and may it please the court, Tice Walters for the individual defendants. As the Supreme Court has long recognized, if there are reasons to think that Congress might doubt the efficacy or necessity of a damages remedy against individual federal officers, courts refrain from creating such a remedy. And when Congress has created any alternative existing process for protecting an injured party's interests, that alone will preclude extension of Bivens. Congress, in enacting the statutory process governing financial enforcement proceedings, struck a delicate balance between protecting the national interest enforcement of the banking laws, on the one hand, and giving adequate process and protection for those in administrative enforcement proceedings and those who work in the banking industry, on the other hand. And Congress did not instruct. How is the banking scheme different from any other context in which an administrative agency might take enforcement action, and if they do, there are administrative protections, and at the end of the administrative process, there are rights of judicial review? I think it is significant, your honor, that this is a unified scheme. The Eighth Circuit in Sinclair against Hawk, in looking specifically at Korea and the banking context, noted that Congress did point to a Senate report saying that, you know, we were paying attention to this careful trade-off on either side. And of course, ultimately, the special factors inquiry is a context-by-context one. There may be other administrative areas that would similarly reflect this sort of balancing and this careful attention to what processes are put. Putting aside Egypt, the balancing is what exactly? The person accused can defend himself? Well, your honor, the question is, of course, not exactly what sort of remedies are offered, but what sort of process is available to protect the interest. And Mr. Lumier ultimately is alleging that he was subjected to a baseless enforcement proceeding, and there's no question that Congress did give protections to protect the constitutional and other interests of the agency. Is it an allegation that he is subject to a baseless enforcement proceeding, or that he's subject to a baseless enforcement proceeding because he exercised his First Amendment rights? That's absolutely right, your honor. There is also, of course, a retaliatory allegation. But under cases like Schweiker against Jalicki, there doesn't need to be a specific remedy for the First Amendment aspect of the harm. I mean, in that case, the Social Security applicants had no constitutional remedy at all. The only thing that they could get was what they should have gotten through the process initially, which was their Social Security benefits. And the Supreme Court made very clear that the fact that there was no additional remedy for the constitutional harm was irrelevant. And the same is very much true here. There was certainly a process for protecting against baseless enforcement actions. And although there may not have been a specific remedy directed to the First Amendment aspects of Mr. Lumiere's harm, that nonetheless will serve to preclude a Bivens remedy. But if it was not baseless, but was selected out of hundreds of other people purely because of his First Amendment reasons? I'm not entirely sure there would be a cognizable First Amendment claim in the first place in that case, Your Honor. I mean, in cases... What if the agency announced, we are only going to be prosecuting Democrats? We're only going to be prosecuting Republicans? We're only going to be prosecuting people who criticize the agency? Your Honor... We're going to be selecting those out of all the possible acceptable cases. Do you think that's constitutional? I don't think that that is a constitutional action, Your Honor. But obviously, I mean, the same thing would be true in the criminal sphere if prosecutors announced that they would only be doing that. But there still, of course, is not a retaliatory prosecution claim if there is probable cause to bring the prosecution. Well, that's not true. There is a selective prosecution claim for outrageous government conduct. Well, in that case, perhaps the same would be true in a case like this, Your Honor. But of course, that isn't the sort of claim in this Court would not need to make any sort of a ruling as to those sort of facts in a fairly run-of-the-mill, the agency-instituted enforcement proceedings against me because they didn't like my speech. And as noted, Congress has provided remedies for people who are in these sort of proceedings and has certainly protected, created an alternative existing process. Because of course, decisions like Wilson v. Liddy make clear that there need not even be a remedy available to that particular individual. The important thing is that the design of the scheme suggests that there are adequate protections in place from a process standpoint. I thought you relied heavily on the proposition that you were not willing to assess the adequacy. That's absolutely true. Apologies, Your Honor. That Congress has created a process for protecting the rights. This Court, of course, does not second-guess Congress's decision as to the reasonable inference that Congress thought it was remedying the issue, or at least may have thought it was remedying the issue, the problem. Your Honor, I don't think that is done on a constitutional right-by-constitutional-right basis. The question is, as in cases like Schweiker or this Court's decision in Spagnola, whether there is an adequate process for protecting the injured party's interests. It doesn't have to be that it is protecting that particular constitutional right so long as the harm done is encompassed within the scheme. So in the Spagnola case, for instance, there was a claim that the harm done was outside of the scheme, and this Court, sitting en banc, said that because the scheme, in one way or another, would be to claim such-as-plaintiffs by condemning the underlying actions as prohibited personnel practices, that that was enough to prove a presence remedy there. Does the generality of both the APA and EJIA make any difference? It's a little bit hard to think of the Congress that enacted those statutes as carefully weighing the pros and cons of both the APA and EJIA. Well, I think certainly in enacting FARIA, there was an understanding that the EJIA process would be part of the administrative remedies available, and of course, there need not be a unified congressional intent. I mean, the Court's decision in Lyft very recently made clear that you can look at the gestalt of all the remedies and processes available. Well, I guess with respect to the APA, it's expressly incorporated in FARIA. That's absolutely right, Your Honor. So I think that that is a particularly powerful combination where you have this sort of backdrop of processes against which Congress is legislating, and then here they are enacting a particular unified scheme for regulation of a particular industry, in this case, the banking industry, and seeking to weigh the various concerns on each side there. We were unable to find any case addressing the presence or absence of EJIA to this problem, and I gather that you agreed to say it was true of you. Do you have any explanation for that? Well, Your Honor, there aren't a tremendous number of cases in general in which people have sought to bring retaliatory enforcement-perceiving claims in the administrative context, and I think that's probably one of the reasons that the Court doesn't see a great deal of reference to EJIA in other cases. And I think that's actually significant, because to open up the floodgates here and say that there is a First Amendment retaliation claim in administrative enforcement proceedings would potentially have a very significant effect, certainly on... I think both parts of your answers contradict themselves, because if these things are rare, the problem of retaliatory pursuit in the administrative context would see a lot of cases raising the EJIA matter. Well, I'm not sure that they would be rare if this Court were to go ahead and recognize a remedy in this context. I think that there would likely be quite a number of cases going forward. In the past, there have not been, and I think that's because the Supreme Court has made fairly clear that courts should hesitate to enact additional live-ins remedies, particularly in cases like this where you do have a complex remedial scheme available. Do you want to say something about Iqbal? Absolutely, Your Honor. So in many ways, this case is very much on fours with something like Iqbal or Twombly. There is no, for instance, real explanation of what these individual defendants did. I mean, not really, because Iqbal turned on the very obvious alternative explanation that what was being done was in response to a national emergency and in response to the I mean, certainly that was a part of that case, but the Court also made clear that there had to be specific well-pleaded allegations saying what each individual defendant had done to violate the Constitution, and that's entirely absent here. This is ultimately a retaliatory inducement case. That is, no one is contending that these defendants had charging authority, and so the claim is that they somehow induced the OCC to bring these charges, but there's just But they have specific non-conclusory facts that would seem to support a reasonable inference of bad motive, just at the pleading stage. We have to accept as true the non-conclusory allegation that the regulators said some ugly things, and Mr. Lumiere overheard that and went to the IG's office. That's all correct, Your Honor. And that would support a reasonable inference that they might have had it out for him. I'm not sure that's true, Your Honor. To be clear, the letters talking about people who said, as you said, some ugly things don't suggest that it was any of these defendants who said the ugly things, and indeed, there's no actual reason to believe that these defendants even knew about these letters, and of course, shortly after these letters were sent, the OIG then sent Apparently, that was an arrangement between the OIG and the Office of Control of the Currency that the OIG were dropping in exchange for OCC taking it up. That is the allegation, Your Honor. Which remains a mystery, right? That is the allegation, Your Honor, but I think it's at least telling as to whether there would be a desire five years later to retaliate by these individuals who were not named in these letters that then never led to an investigation. I didn't stress the time, but wouldn't it be extremely imprudent for these people to proceed against Mr. Lamiat while it was uncertain whether there was any case at all against the bank officers? That would be astonishing for them to do that. Well, wait until you've collected what the scalps are supposedly after, and then go after the others. Perhaps so, Your Honor, but it does seem, at least under this Court's precedence, somewhat probative that they did wait five years to retaliate, apparently, for these two letters. It might in some circumstances, but I don't think in these circumstances it's particularly mystifying. And again, I just wanted to return to the idea that there is no actual explanation of why these three defendants, out of anyone who works at the OCC, they weren't. The only thing that these people really have in common is that they worked on both investigations, which isn't particularly surprising insofar as one investigation was the outgrowth of the other investigation. But there's no specific allegations as to why one of them, out of all the people who might have been embarrassed and angered at general allegations relating to the Hamilton investigation, why these three were the ones who were particularly angered, and why these three, what actions they actually took to induce the OCC to bring charges. So you're focusing on what I regard as the second step in Iqbal. Iqbal was clear that there are two steps. One is you have to specifically identify what the acts are that the actual defendants did, and then after that you have to discuss plausibility, which is what we've discussed here. On the question of what acts they actually did, do we know who signed the complaint or however a complaint is made against a, in the banking circumstance, against Mr. Lumiere? I'm not certain, Your Honor. I can check on that. I believe it probably would have been Mr. Strauss, who's been dismissed from this case, probably would have been the signer. There wasn't any of the remaining? I don't believe so, Your Honor, but I can go back and check on that. And certainly, of course, there's no allegation here that any of these individuals signed the complaint, at least not that I was able to see in plaintiff's complaint. And, you know, Mr. Riordan testified at the proceeding, but the other two, there's just these very general allegations that they were influential in the proceeding and influenced the proceeding, and I think that that is a sort of step one of the Iqbal inquiry problem. So why doesn't the complaint survive at least as to Riordan on that issue, on personal involvement? So even as Mr. Riordan, the only thing that they really say, again, specific, is that he testified as an expert witness at the proceeding. And, again, that's not an inducement to bring a retaliatory enforcement action. That's just testimony as an expert witness. Thank you, Your Honor. Excuse me. Mr. Lumiere. Sorry. Good morning, Your Honors. I would like to start with the Vivens issue, if possible. And I want to remind myself and everyone else, this is a retaliatory prosecution claim. This is not a claim based on an ordinary enforcement of the statute. This is a case that involves, if the facts that I allege are correct, and if I can prove them, as I believe I can, this case involves a fraud on the courts and on the judicial system, because this is a case that should never have been brought. Now, that's very important for a couple of reasons. One of them is that when the question is, and the appellants raise the question of, they quote Abbas, he's saying the question is, who should decide whether to provide the damages of remedy, Congress or the courts? In a situation where you're dealing with a fraud on the courts, it is much more the court's jurisdiction to examine that fraud, that alleged fraud, and decide whether there should be a penalty on it, rather than Congress. You cannot assume that Congress, in enacting a statute, contemplates the possibility that the statute is going to be misapplied in a retaliatory prosecution that should never have been brought. I would think most defendants in enforcement proceedings feel pretty strongly that the charges against them are baseless and must reflect some nefarious motive on the part of the government. I think, Your Honor, you're going to the possibility issue now? I'm going to, I guess, the sensitivity of applying Bivens in this context of enforcement, which is very different from the FBI agents in Bivens itself, or the prison guards in, I guess, Carlson. There's a case that just came down from the Ninth Circuit that I would like to refer you to, La Nussa v. Love. I'm sorry, have you submitted a paper? No, I have not. When you argue about a new case, you have to give the other side an opportunity. Oh, okay. So if you want to submit a, what we call a 28-J letter, that'll be fine. Okay. And cite the case and provide a copy to the other side. So I do that afterwards? Afterwards, yeah. Okay. You should do it before, but you can do it afterwards. I apologize, I'm not an expert in this procedure. That's all right. This case involves, again, we go back to the question of who should decide whether damages are appropriate here or not. It is not plausible, if I may use that word, to think that Congress, when it enacted FIREA or any other statute, is thinking about the possibility that government officials may take that statute and misapply it in a retaliatory prosecution. And that process, as I said, is a fraud on the courts, and it's something that attacks the integrity of the judicial system and the judicial process, and therefore it's something that the courts themselves should be very concerned about and where the courts logically are just as qualified or more qualified than Congress to fix the remedies that… Could you develop your theory as to why it's a fraud on the courts? Because it's a case that should never have been brought, Your Honor. It's a case that was brought… As Kansas suggested, a lot of people must feel bad as to cases brought against them. Yes. And the courts can provide relief on a much lower relief, in the sense of setting aside the order, on a much more defendant-prescutee-friendly standard than is necessary in a retaliatory prosecution case. Your Honor, I submit that you can't have a retaliatory prosecution case, which is also an ordinary enforcement of a statute. Because to have a retaliatory prosecution case, I am going to have to prove that there was no probable cause, that there was retaliatory motive, and there was fraudulent inducement of the prosecution. Those are the conditions in Hartman v. Moore. If those conditions are present, then you do not have a standard enforcement of a statute by an agency. And that's why I say that this case falls outside the statute. It could happen with any statute, where for reasons of retaliation, an agency chooses to misapply the statute, and abuse the statute, and abuse the judicial process. And that is what I contend that happened here, and I know I will have to prove it. But if I prove it, then this is not really about firea. It's about what happened in terms of the misuse of the judicial process. But you do have a remedy with respect to your injury. That is, on appeal under the APA, you could argue that you were selectively prosecuted. That is, that you were prosecuted because of your First Amendment right as retaliation. In Trudeau, we said that was a potential cause of action under the APA. It just doesn't lead to money damages, but you do have relief. You get out from under the sanction. Well, I don't, Your Honor, because I didn't lose. Yes, that's right. From the agency level. Well, you have two ways of winning. One is to show it's baseless, and another to show that it was retaliatory. And you succeeded in the first, so you didn't need the second. Well, but that goes back to the reasoning of the appellant, which is, any time you're sued under a statute and you win, the statute itself is your alternative remedy. The fact that you won is your alternative remedy. And that doesn't make any sense because then you could never have retaliatory prosecution because if you win, the statute was your alternative remedy. And if you lose, well, you lost. You were properly found responsible. So I don't see how the statute, which is used to attack you, can itself be your alternative remedy. And there is no other remedy. There was no action I could have taken of any type. Moreover, it's clear that I fell outside the statute. So the statute was being applied to someone to whom it did not even apply on his face. So I'm just saying that that's additional. Well, but not really because the reason why the charges against you were dismissed was the conclusion that your reports didn't harm the bank, right? Yes, Your Honor. If they had found that your reports had harmed the bank, you were a lawyer for the bank, you had fiduciary duties under the law as it existed at the time, they could have gone after you on that basis. Your Honor, this is a very unique, as you know, this Court has already found that there was no substantial justification for the case against me. Because the reports didn't harm the bank. Well, that's right. But here's the thing. But that seems different from, like there's a scheme that regulates lawyers and the government uses it to go after a doctor. I understand, Your Honor, but here's the thing. The statute had certain requirements before you could proceed against someone. One of them was what you just touched on, more than a minimal financial loss to the institution. The government never even tried to prove that. They never tried to establish it. And then, most embarrassing, when the agency head ruled, he ruled you had it wrong all along. Now, ask yourselves, why is it that an agency pursues a case like this, prosecutes a case like this for a couple of years, without first going internally to their own staff and their own general counsel and asking them, what is the standard? It's extraordinary, when you think about it, that they prosecuted me for two years and they did not know what standard was within their own agency's contemplation, what the standard was for damages. And it's a remarkable situation, really. And it's one of those other... Are you suggesting that government sloppiness is terribly unusual? I'm suggesting that this was... Your Honor, I'm suggesting that this was more than sloppiness. I think that they knew from the beginning that there had been no more than minimal financial loss to the institution. And it didn't matter because they were going to make me pay. And if you read the complaint, if you look at the complaint over and over again, and you look at the things that happened during the trial, they were shameful. They were shameful. They were an abomination in terms of judicial process. They should never have happened. And they cannot be explained other than that something very, very strange was going on here. Can I ask you about the... Again, I think that is the second Iqbal question. And the first Iqbal question is this. Iqbal says, Plaintiff must plead that each government official defendant through the official's own individual actions has violated the Constitution. What is the specific place that you would point me to in the complaint where you make a specific claim about the defendant? Okay, there's a series of paragraphs. If you tell me the paragraph, that would help. 44, 52, 56, 61, 64. Hold on, one at a time. What's the first one? 44. Okay, and what is it in 44? I don't have the complaint here, but I did take all these down. You have your appendix there? It's in the appendix. So what I'm looking for here is, since the allegation is that the agency retaliated, that these defendants retaliated against you for your First Amendment right, you need a specific allegation of what each defendant did. I just want to begin by saying I'm finding it difficult to find that. That's why I'm asking you. What the defendants did, Your Honor, let me go back. I can't find the complaint here. Oh, here it is. J.A. 19. Yeah. The complaint lays out, explains that in 2001, I wrote some letters that were harshly- And that- Let me narrow this down. Is there a place where the complaint says, names anyone of the defendants and says, this defendant spoke directly with the person who filed the complaint against Mr. Lumiere at a certain time, at a certain place, or anything like that? Your Honor, what the complaint says is that the defendants induced the prosecution. But as you'll understand, it's impossible for me to know how that happened. Well, so this is a problem. I very well understand the problem. But the Supreme Court is the Supreme Court. And in Iqbal, they expressly said that when the respondent pleaded that the petitioners, quote, condoned and willfully and maliciously agreed to subject him to harsh conditions of confinement as a matter of policy, solely on account of his religion, race, and national origin, and for no legitimate peneological interest, that was not enough. That was a bare assertion. I would say many people argued before Iqbal that would have been enough, but it is certainly not enough now. And so the question is, where did you say in your complaint something more than what the Iqbal plaintiffs said? Again, Your Honor, it's scattered throughout the complaint. So I'm trying to say that there's probably 12 or 15 paragraphs that talk about the defendants' involvement in the process. Now, if you're asking me where exactly did they talk to the prosecutor, how did they induce him, I can't know that. There's absolutely no way I can know that. So how is that different? How is it different than the court's holding that a claim that the petitioners agreed to subject the person to harsh peneological conditions was not enough? In your case, you say that the plaintiffs colluded, influenced, et cetera, but you don't say any specifics. How is it different than what happened in Iqbal? Well, Your Honor, if you find that this complaint is not sufficiently detailed, that's my fault, and I would like leave to amend under Rule 15 so I can add additional detail to address all of the points that have been raised by appellants. Let me give you an example. Why did they wait until 2006? They tell you themselves in their brief. The final case involving Hamilton Bank was decided in the summer of 2006. Only after that case was resolved could they bring this action without fear of being embarrassed because another tribunal might disagree with them. I think that goes to the plausibility question, which is an answer to Judge Williams. But a question to you, but it doesn't go to the first step of Iqbal. That's what's worrying me here. And the first step of Iqbal is exact actions that they took internally. I don't think anybody could ever know that, Your Honor. Okay. This type of case, this is impossible. We have to know exactly what steps the government officials took internally. Are there further questions? Thank you. Does the government have any time left? We'll give you one minute. And if you want to submit a Rule 28J letter, feel free. Just cite the case and attach it and serve it on the other side as well as on the court. Okay. Thank you, Your Honor. Thank you, Your Honors. Just a few very brief points. The first is we do think that we should prevail on either qualified immunity or special factors under ABASI. But we would urge the court to address, as this court suggested in LIF at the earliest practicable stage, the ABASI claims, the special factors claims. But we've said it's appropriate to do that. We've never said it has to be done. And, in fact, sometimes we do one and sometimes we do the other. And, in fact, that's exactly what the Supreme Court did in Iqbal. That's exactly right. We're not suggesting that you're under any obligation to do so. We were merely respectfully urging. As to the claims on special factors, as Judge Katch has suggested, there is special sensitivity here. And to the extent that the plaintiff is ultimately alleging that there was fraud on the court because the proceeding was not justified in bringing it, that is precisely the sort of thing, first, that many administrative enforcement respondents would want to say, and, second, that Congress has provided, in the words of Schweiker against Chaliki, meaningful safeguards or remedies for the rights of persons situated precisely as a respondent was. Further questions from the bench? I think we will take this matter under submission. We appreciate it. Thank you.
judges: Garland, Katsas, Williams